Good morning, Your Honors. Evan Lowney for Appellant James Biltcliffe. May it please the Court, I'd like to reserve three minutes in rebuttal. Yes. At the outset, there's a threshold question as to the standard of review in the scope of the appeal. I'd actually like to put that issue aside for a moment and address the question with respect to GL-244, Section 35A, and the statutory notices of default, simply because I believe that under either standard of review, reversal is warranted, and because this is the most substantive issue here, I'd like to address it first. We have a situation here where there is the lower court's holding has suggested that GL-244, Mass General Laws 244, Section 35A, and the right to cure letters or statutory notices of default are sufficient to constitute an acceleration and to subsequently exercise the statutory power of sale. It's simply not the practice, and it's simply not true, and it's not a position that anyone in this case took until the judge made that ruling. It's a, you know, as Justice Salyer pointed out in the first case today, I mean, there is, we're down a rabbit hole here of perhaps coming up with some horrendous precedent on an issue that no one's even argued. The case is about whether or not, whether or not there was an acceleration of the note mortgage, and, you know, in Massachusetts, you know, we have practices. We have a situation where pursuant to 244, 35A, a bank sends out a right to cure letter. At the time that this right to cure letter went out, the statute said such a timeframe was 90 days. The Massachusetts legislature has since amended that position and given the borrowers more protection. Now it's 150 days. If they don't cure in that period of time, the bank hires foreclosure counsel. Foreclosure counsel sends out a notice of acceleration. These notices of acceleration are almost always sent via certified mail. The lower court has misconstrued an argument that was being made all along here that the failure to have certified, sent certified mail, the acceleration letter in question, that that somehow was an argument about whether or not defendant could prove that it was mailed by producing a green card or a postal receipt. The argument was about the fact that there's a question as to the issue of reliability of this evidence because it's just something that's not done. Well, when you say it's something that's not done, is there any statute that requires certified or registered mail in this instance? No, Your Honor. There's no statute that requires it. And is there any statutory provision that says that the cure and acceleration notices can't be combined? No, there's no statutory provision. So it seems to me that the fact that the defendant in this case may have followed some different practice isn't necessarily helpful to you unless that practice is somehow contrary to Massachusetts law since Massachusetts. Well, with all due respect, Your Honor, we're hearing a motion for summary judgment that was converted from a motion for judgment on the pleadings, and we're looking at what the evidence was and what the state of the record was at a variety of points in time, depending on which standard of review you look at, what's in the record. And if we look at it from the standpoint of what did the defendant have and what did the plaintiff have as of July 10, 2012, then what we have is a letter that purports to accelerate a note that is not addressed to the named plaintiff that is not sent certified mail that has been authenticated by an employee who merely says that the office caused to be mailed this acceleration letter, which, I mean, we have a law firm that is a foreclosure mill, which ironically is in an old mill on California Street in Newton, and which essentially all that means is that this person, Sarah Crocker, has looked in a computer somewhere in Newton and said that this letter shows up in a computer somewhere in Newton. The standard is was this mailed, and we don't have someone that's got any authority to buy the firm. But, counsel, that's the way business records are normally proved in this day and age. And so what we've got on the issue of mailing is an affidavit by someone who presumably has some responsibility for business records saying this is what the business records show, they show mailing, and we have no evidence that it wasn't mailed. We have plaintiff's own sworn statement that it wasn't. No, the plaintiff's own statement wasn't that it wasn't mailed. We have plaintiff's own statement that it wasn't received, but the mortgage document only requires mailing. Your Honor, I would suggest that there is other evidence in the record that calls into question the veracity of Ms. Crocker's affidavit that had the defendant moved for summary judgment instead of this procedure whereby in these foreclosure defense actions the defendant comes in and files a motion for judgment on the pleadings. But the court converted this to summary judgment, so what's the difference? Well, if the defendant had moved for summary judgment, the defendant would have put the evidence that it purported to have into the record. But the court had to do that, but the defendant had to do that under the court's ruling, because once the court says I'm converting this to a motion of summary judgment, that means the defendant has to step up and put forth its evidence, which the defendant did. And the defendant put it up as opposed to 21 days in advance for me to respond to or for an appellant to respond to. I had 45 minutes to respond, and that is... That may be a different issue. That's your issue that the district court abused its discretion in refusing to, once the defendant made this document dump at the last minute, in refusing to enlarge the time so that you had a decent amount of time to respond to it. That's a different issue, and that may be, to my mind, one of your strongest issues in the case. But my favorable reaction to your position is tempered somewhat by saying we are now several months after that occurred, and I've read your briefs fairly carefully, and I still don't understand what you would have done or what contrary evidence you would have come up with had the court given you another 20 days or another 30 days, something like that. Well, Your Honor, I don't think that I can respond to that without bringing in evidence that's not in the record. I mean, what I can say is that I've spoken to the person whose signature is purportedly on this document, and, I mean, discovery would bear out in this case that there are questions as to the authenticity of that document. It's not in the record, Your Honor, and I can't really respond to that other than the fact that it was, you know, this case was stopped before it even had a chance to begin. I mean, we have a district court here who has made a ruling on an almost identical procedural posture of a ruling it made earlier wherein the parties were engaged in, you know, assented to motions to continue things where the only evidence in the record is some very thin stuff by the defendant and plaintiff's sworn testimony, and in that case, there was actually evidence in the record that plaintiff was lying. And, you know, when directed to an error of law, the same court reversed, and in this case, the motion for reconsideration was dismissed out of hand. And it's not like this wasn't brought to the court's attention in the court below. And it wasn't that the court gave an explanation of its holding and dispelled appellant's concerns. It was ignored. And so to suggest that, you know, and we're here on a case that, you know, When we look at, as you just said, the scope of the appeal question, we get into, you know, whether or not this is, you know, a de novo review of the underlying judgment or whether it's an abuse of discretion review of the denial of reconsideration. I think that, you know, when we look at it, the formulation that the strict language be construed literally, there's no obligation there. This court has said that. In saying so, you know, we cite Foman v. Davis. You know, we want to facilitate decisions on the merits. There is no way to get to the merits here without discovery. And we're, you know, we've torpedoed the case on a conversion to summary judgment with 17 days to respond to an order that says bring anything into the record that you may have without having already, with appellant already having raised the issue, questioning the authenticity of the document. And putting forth the position that there really would be no way to authenticate this document and pointing out that most acceleration letters in this day and age are sent certified. It is the policy and practice in Massachusetts. It is the first communication from foreclosure counsel. And to then produce an uncertified acceleration letter addressed to, you know, a non-party signed by somebody who no longer works for the firm, there's just too many coincidences there not to allow discovery. Thank you. Can I ask you just one quick question? Certainly, Aaron. You just sort of slipped over the question of what you appealed from. The initial notice of appeal seems to have only been from the denial of the rehearing. And it was only subsequently that you dated back. Why aren't you bound by your notice of appeal? Since I have no time, I'll answer that very briefly. I would point the Court's attention to Chamorro v. Puerto Rican cars. It's an accident. I mean, I think if you look at the entirety of the timing, 28 days, I was certainly trying to preserve the underlying judgment. The appellant tried to use the Court's own forms. It is a clerical error. And I think if you look at the appellant's docketing statement. You should be relieved from that. I'm sorry? You think you should be relieved from that. I do think I should be relieved from that. Thank you, Your Honors. Good morning, Your Honors. Joseph Farside for Appellee City Mortgage, Inc. I've reserved three minutes solely to discuss the issue of standard of review. And my co-counsel, Mr. Frechette, will discuss the merits. I agree with Your Honor's statement that counsel should be held to his choice in what the plain text of his notice of appeal says. There is an obligation of what you write on that notice of appeal, and that's set forth in Rule 3C. And it says, must designate the judgment, order, or part thereof being appealed. As appellant's counsel just acknowledged, it was a mistake, a misstep, an accident, however you want to characterize it. But Mr. Biltcliff has competent counsel, and that's what he chose to put in the plain English text on the notice. I'm aware of the precedent that Mr. Biltcliff has cited in his brief, which under certain circumstances does allow for relief from a strict adherence to what Rule 3C says. And I submit that those circumstances are not present here. As the Court is well aware, the Cotler v. American Tobacco decision is a 1992 case of this Court. And in that case, the notice omitted any reference to a prior order, included reference only to a more recent order. And in that case, this Court said that such an action loudly proclaims an intent not to appeal the former order. There are other more recent cases of this Court in which relief is granted from strict adherence to the rule. And in those cases, the Court is focused on whether or not the later appeal from order was inextricably intertwined with the prior order. And in this case, those facts are not present because the motion for reconsideration here was not inexplicably intertwined for a reason that it contained purported newly presented evidence and arguments that were really an intent to overturn the District Court's order denying appellants motion for leave to file a late reply. So in this case, I would submit that even if we get to the discussion of whether or not the two orders were inexplicably intertwined, that they were not because the intent in the motion for reconsideration was to put new evidence before the Court purported new evidence. And that takes this out of a do-over, such as in Diaz, which is a case cited by Mr. Billcliffe. And when you review the actual motion for reconsideration in Diaz, it's just a simple ask the Court to look again. In fact, it opens with the statement, the trial was a complete disaster. There was no new evidence or anything like presented in this motion for reconsideration. But where opposing counsel isn't trying to obfuscate, play any games with the Court, doesn't seem to be trying to expand anything, just says it was an error. What's the harm? Why should we apply the harsh rule? Well, I would submit that it's not... May I finish, Your Honor? I would submit that it's not a harsh rule when it's quite simple to follow the text of the rule and the order appealed from has a title and a caption to it. And then several months went by wherein settlement discussions were had, strategies were made, when at all times it appears the motion being appealed from was the motion for reconsideration, which carries, as you know, a different standard of review. Thank you, Your Honor. Good morning, Your Honor. It's Donald Furchette on behalf of City Mortgage. I'd like to address a couple of brief questions. First, the breach of contract claim that's been pled here is a suggestion that it was improper to foreclose without first accelerating the debt and providing notice of that acceleration. And, indeed, Judge Selye, your observation with respect to the discovery issues, which I'll turn to in a moment, I think is premised upon the notion that an acceleration notice is required. There is no requirement under Massachusetts law, nor is there any requirement in this mortgage contract for an acceleration notice. And the cases that are cited by Brother Counsel to that effect are simply distinguishable. The Shane case does not say that notice of acceleration is required. In fact, that case actually held that the right to notice had not even been triggered because there had been no showing that acceleration had occurred  Shane's perhaps best acknowledged or has its most salient aspect is its reference to the Wilshire decision, which doesn't require notice to accelerate, but merely an election. In effect, the mental process of we've decided we're going to accelerate. So this focus on the letter and whether it was properly authenticated or not, I would submit is, as the District Court ultimately found, irrelevant because there's no need for the letter in the first place. Now, Brother Counsel's suggestion that the District Court conflated default notices and acceleration notices, I would submit is simply wrong. When you read page 11 of the District Court's decision, what the District Court says is, neither the mortgage contract nor Massachusetts law required defendant to send a subsequent notice when the debt was actually accelerated, semicolon. Defendant's initial demand letters satisfied both the contractual and statutory notice requirements. Well, again, that doesn't suggest that default notices and acceleration notices are synonymous. It merely indicates that the default notice that was sent and was indisputably sent and that the plaintiff acknowledges was sent, satisfied the requirements of Massachusetts law. Now, with respect to the question, Judge, I saw you that you raised, or at least the observation that you made, as regards the conversion of this motion from an NJOP to an MSJ. I guess to start with, and I've just alluded to it, I don't think it would have made any difference in any event because focusing on an irrelevance, i.e., an acceleration notice that's not required by law, that really doesn't get us anywhere. But what I would say also is this. As the District Court took pains to point out, none of the subsequently provided documents, the so-called dump, and I have to take issue with that word because we're not talking about thousands of pages. We're not talking about hundreds of pages. We're talking about, I think, 10 to 15 pages. I might be wrong, plus or minus. But the District Court took pains to point out that the vast majority of these, and I might add, most importantly, the acceleration notice, these were documents that the plaintiff had already seen. He knew they were coming. There weren't any big surprises here. Now, there also had been no discovery propounded. Okay. I accept the notion that, well, I didn't know you were going to file a motion for summary judgment or it was going to be converted to a motion for summary judgment, and so therefore now I want some discovery. But there's an obligation incumbent upon the plaintiff under the rules. When he asks for discovery, he's supposed to provide an affidavit stating exactly what it is that he needs. He failed to do that. So he never propounded discovery. When he had an opportunity, when he was supposedly surprised by these documents, he had an opportunity to ask the District Court for discovery and to follow the rules. He failed to do that. He failed to take an appeal from that ruling. And most important, with respect to the affidavit that he now contests, the Crocker affidavit, he undertook no effort to strike that affidavit or to otherwise contest it in any way. And I would point the Court to Judge Howard's decision in Cheryl Cerise de Rozier versus Hartford Life and Accident at 515 F. 3rd 87 that makes clear, unless you move to strike the affidavit, you really lose your standing or your ability to object at a later point in time. So I really think the whole issue of the late discovery and this focus on the authenticity, albeit uncontested authenticity, of the acceleration notice is misplaced. Because at the end of the day, we just don't require an acceleration notice. That being the case, I believe the other claims fall. I think the waiver issue is very plainly dealt with by the contract. It makes it quite clear that additional payments can be accepted without in any way compromising the default. The unjust enrichment claim plainly falls because there is an express contract here. And beyond that, Your Honors, we would rest on our briefings unless the Court has any questions. No, thank you. Thank you. Thank you, Your Honors. With respect to the scope of the appeal, I would simply point out that the idea that strategies, that there's been prejudice to the appellee because there were strategies made in the interim. The docketing statement required by the First Circuit is very clear. It sets forth questions about tolling and whether or not underlying judgments appealed from or whether there was a period from which the time for filing a notice of appeal was tolled. All of those questions were filled out within weeks of the notice of appeal having been filed. And so the idea that mediation was undertaken under the auspices, that this was just a denial of motion for consideration or something along those lines, it's just a meritless argument. So I just would like to draw the Court's attention to that. Simply, you know, the only other two issues that I'd like to address are appellee makes much of the fact that even were the Court to reverse, the result would be the same because the acceleration notice is unnecessary. I would suggest, first, this is a court, a district court sitting in diversity. That's simply not the law. 244.14 provides, you know, a party seeking to exercise the statutory power of sale must follow strictly its terms and goes on to suggest that this may be in Massachusetts case law, but there's certainly a suggestion that all of the prerequisites to exercising such statutory power, including following the terms of the mortgage contract, need to be undertaken. And the mortgage contract does require an acceleration prior to getting into whether the statutory power can be exercised. And the issue doesn't come up because it's just not what's done. You know, and when it does come up, we end up in this situation where, you know, we have these, I'm going to move on. If the Court reverses, there was an issue in the record as to the scope of this case and appellant's intent to amend, to add 93A claims. This case was torpedoed unexpectedly and appellant has not had the opportunity to prosecute the full scope of his case and would ask the Court for reversal on all counts.